Filed 9/2/25  P. v. Flowers CA2/6
Opinion following transfer from Supreme Court
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RACE FARRELL FLOWERS,<br><br>Defendant and Appellant. | 2d Crim. No. B312522<br>(Super. Ct. No. 20F-02462)<br>(San Luis Obispo County)<br><br>OPINION ON TRANSFER<br>FROM THE SUPREME<br>COURT |

This case illustrates a continuing problem confronting the Court of Appeal: when to affirm or reverse on claims of sentencing error?  We draw from Supreme Court precedents and ask these questions in the context of the presenting case: Is there a miscarriage of justice in this case, i.e., is it reasonably probable that appellant will obtain a more favorable result on theoretical remand?  No.  Is there a "reasonable chance" that appellant will obtain a more favorable result on theoretical remand?  No.  Is there a "clear indication" that the trial court would have imposed a lesser sentence had it been aware of a more limited discretion?

No.  On theoretical remand for resentencing, could any "rational fact finder" decide that all the circumstances in aggravation were not proven beyond a reasonable doubt?  No.  Any deprivation of appellant's sixth amendment rights is harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18.)  These issues are addressed to the judgment of the Justices at the Court of Appeal.  We are independent state constitutional officers.  We do not speculate on this record.  As we shall explain, the various questions we are asked to consider and resolve lead us to but one conclusion: the judgment should be affirmed.  We so conclude beyond a reasonable doubt.

This matter is again before us after transfer from our Supreme Court for reconsideration in light of *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*).  This opinion settled a division among the districts of the Court of Appeal on the appropriate standard for assessing prejudice in the context of noncompliance with the requirements of Penal Code[1] section 1170, subdivision (b) as modified by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567).  (Stats. 2021, ch. 731, § 1.3.)  In accordance with the direction of the Supreme Court, we vacated our earlier decision and permitted supplemental briefing from the parties.

Race Farrell Flowers appeals the judgment after the jury convicted him of robbery (§ 211).  He waived a jury trial as to the charged enhancements and the trial court, based upon certified records, found true the allegations that appellant had two serious prior felony convictions (§ 667, subd. (a)) and two "strike" convictions (§§ 667, subds. (d), (e); 1170.12 subds. (b), (c)).  The

---

[1] Further statutory references are to the Penal Code, unless otherwise stated.

trial court struck one of the "strike" convictions. It sentenced him to 20 years in state prison (the upper term of five years for the robbery conviction, doubled for a strike, and five-years each for the two serious prior felony convictions. It ordered appellant to pay a court operations assessment of $30, a court facilities assessment of $40, and a $5,000 restitution fine.

Appellant contends the trial court erred in imposing the upper term pursuant to section 1170 as it existed at the time, and as it exists now. He also contends the trial court erred in imposing fines and fees without determining his ability to pay.

Having reconsidered the matter and having reviewed the parties' supplemental briefs, we conclude, beyond a reasonable doubt, that a jury would have found, beyond a reasonable doubt, all of the aggravating factors upon which the trial court relied to impose the upper term. No rational fact finder could find otherwise.

## *FACTS*

In November 2019, appellant's codefendant, Mario Alford, entered a check cashing store and pointed a gun at the manager. He told her to go to the safe. He bound her face, legs, and wrists with duct tape. He told her not to "look up or go out [of the room]" or "somebody will get mad." Alford took money from the front cash register, later determined to be $2,122. After Alford left, the manager untied herself and called the police. Alford and appellant were friends. They were arrested together with evidence of the robbery in their possession. The victim identified appellant as a previous customer. Another witness also identified appellant as one of two people she saw walking toward the check cashing store around the time of robbery.

Cell phone records showed appellant's phone was in the vicinity of the check cashing store at the time of the robbery. There were also several calls and communications between Alford's and appellant's cell phones before, during, and after the robbery. Appellant's cell phone records showed internet searches before the robbery for the telephone number of the check cashing store, and after the robbery regarding its commission.

*Sentencing*

The probation report, which the sentencing court was required to consider (§ 1203, subd. (b)(3)), included a summary of appellant's prior record. He has 16 felony and misdemeanor offenses between 1994 and 2019. The report listed five factors in aggravation: (1) "[t]he manner in which the crime was carried out indicates *planning*, sophistication, or professionalism" (Cal. Rules of Court, rule 4.421(a)(8)[2], italics added); (2) engagement in violent conduct which indicates a serious danger to society (rule 4.421(b)(1)); (3) prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness (rule 4.421(b)(2)); (4) prior prison terms (rule 4.421(b)(3)); and (5) "defendant's prior performance on *probation . . .* or *parole* was unsatisfactory" (rule 4.421(b)(5), italics added). The probation report listed no factors in mitigation.

After striking one of appellant's strike priors, the trial court selected the upper term of five years for the robbery conviction, and explained, "I selected the upper term because of your long and significant criminal history, and because of the numerous

---

[2] Further unspecified rule references are to the California Rules of Court.

4

factors in aggravation." As indicated, appellant was sentenced to 20 years in state prison. The present prison term is the fifth time he has been sent to prison. Prior to this commitment, appellant was sentenced to prison in (1) 1995, for robbery, (2) 1997, for attempted burglary, (3) 2003, for domestic violence, and (4) 2011, for grand theft.

*Former section 1170*

Appellant contends the trial court erred in imposing the upper term pursuant to section 1170 as it existed at the time of sentencing in May 2021. The People contend that appellant forfeited the issue on appeal because he did not object to the upper term sentence when it was imposed. We agree the issue is forfeited. (See *People v. Scott* (1994) 9 Cal.4th 331, 351-354.)[3]

Even if appellant objected to the imposition of the upper term under former section 1170, there was no error.[4] Former section 1170 provides that when "a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. . . . In determining the appropriate term, the court may consider the record in the case, the probation officer's report, other reports . . . and any further evidence introduced at the sentencing hearing. The court shall select the

---

[3] There is a good reason, and a sound tactical reason, why there was no objection. The trial court struck a prior "strike." This was a truly lenient ruling saving appellant from a 25-year-to-life sentence. Had an objection to the upper term been made and credited, the trial court may have revisited its decision to strike a "strike" prior conviction.

[4] Because we conclude there was no error, we need not address whether counsel was ineffective for not objecting.

term which, in the court's discretion, best serves the interests of justice. The court shall set forth on the record the reasons for imposing the term selected and the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (Former § 1170, subd. (b).)

Here, the trial court reasoned that the upper term was appropriate because of appellant's "long and significant criminal history, and because of the numerous factors in aggravation." It considered his criminal history, which began in 1994 and was continuous throughout his adult life. It also considered the probation report, which identified several factors in aggravation and no mitigating factors. (Former § 1170, subd. (b).) Any one of these factors in aggravation constitutes a sufficient basis to support the upper term. (*People v. Osband* (1996) 13 Cal.4th 622, 730.) Appellant made no objection to the trial court's ruling. Nor did he take issue with any of the listed factors in aggravation.[5]

*Senate Bill 567*

Appellant contends *Lynch* compels remand for a jury trial on certain aggravated circumstances upon which the trial court relied to impose the upper term. He also contends that remand is warranted because the record does not "clearly indicate" the trial court would have imposed the same sentence had it been aware of the scope of its discretionary sentencing power.

Effective January 1, 2022, Senate Bill No. 567 (2021-2022) Reg. Sess.) (Stats. 2021, ch. 731, § 1.3) amended section 1170 such that the middle term in now the presumptive term of

---

[5] There is no dual use facts violation. This is not supported by the record. There were three other felony convictions.

imprisonment.  Section 1170, subdivision (b) now prohibits "imposition of an upper term sentence unless aggravating circumstances justify that term and the facts underlying any such circumstance, other than a prior conviction, 'have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.'" (*Lynch, supra,* 16 Cal.5th at p. 742, quoting § 1170, subd. (b)(2); see *Erlinger v. U.S.* (2024) 602 U.S. 821, 838 ["[A] judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of'"].)  However, "the [trial] court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)  The People concede that Senate Bill 567 applies retroactively to appellant.

In *Lynch,* our Supreme Court held that where a trial court relied upon facts not proved in compliance with section 1170, subdivision (b) to impose the upper term, the sentence must be vacated and remanded "unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true <u>all</u> of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute." (*Lynch, supra,* 16 Cal.5th at pp. 742-743.)  Further, because Senate Bill 567 "altered the scope of the trial court's discretion" regarding sentences imposed pursuant to former 1170, subdivision (b), the record must "clearly indicate" that the court would have found an upper term justified had it been aware of its more limited discretion.  (*Lynch,* at p. 743.)

7

Here, in imposing the upper term, the trial court had before it, certified records establishing appellant's prior convictions.

Any fact-finding error here is harmless beyond a reasonable doubt because the jury would have found every and "all" of the aggravating sentencing factor true beyond a reasonable doubt. The factual predicate to the robbery is horrendous. This was calculated and aggravated armed robbery. The victim was held at gunpoint and forced to go to the safe, told to get down on the floor while she was bound by duct tape. She was threatened that if she tried to "look up or go out [of the room]," "somebody will get mad." She testified that she had not been working since the incident, was suffering from mental trauma, and that her life was "forever changed" by this incident.

As indicated, appellant's prior record is significant with numerous prior convictions. The probation report showed 16 felony and misdemeanor convictions between 1994 and 2019. The certified records established that appellant had five prior felony convictions. Even leaving aside the two strike convictions, he was convicted of an attempted burglary (§§ 664, 456) in 1997, a domestic violence offense (§ 273.5, subd. (a)) in 2003, and grand theft (§ 487, subd. (a)) in 2011.[6] (Rule 4.421(b)(2).) He served prison terms for those offenses, as established by the abstracts of judgment in each of those cases. (Rule 4.421(b)(3).) Appellant's performance on probation and parole was poor. Appellant was convicted of robbery in 1995 and was granted five years' probation, which he violated. Probation was revoked and

---

[6] Appellant's other prior offenses were misdemeanors, and the certified record does not include the misdemeanors. Nonetheless, it reflects a long and significant criminal history of felony convictions.

terminated after he committed attempted burglary in 1997. The court executed a two-year sentence for robbery and a consecutive eight months for the attempted burglary. He was convicted of a domestic violence offense in 2003 and granted three years' probation, which he violated. His probation was revoked and a five-year prison sentence was imposed. He also repeatedly violated parole following his first two prison commitments. He was convicted of criminal threats in 2014 and was granted three years' probation. He admitted a probation violation a few months thereafter. Although he completed the remainder of the probation term, he committed the current offense just two years later. In sum, had these aggravating factors been presented to the jury, they would have been found them all true beyond a reasonable doubt. (*Lynch*, *supra*, 16 Cal.5th at p. 777.)

*People v. Wiley* (2025) 17 Cal.5th 1069 (*Wiley*) does not compel a different result. *Wiley* held that the trial court's failure to submit the "increasing seriousness" aggravating factor was prejudicial since none of Wiley's felony offenses were more serious than the others and a jury could have disagreed as to whether his criminal history reflected criminal conduct of increasing seriousness. (*Id.* at p. 1090.) *Wiley* also held the trial court's failure to submit the "unsatisfactory performance on probation" aggravating factor was prejudicial since the defendant had one successful performance on probation with him completing a residential drug treatment program, obtaining his driver's license, paying all court ordered fines and fees, and committing no probation violations.

Here, the trial court relied on the length and significance of appellant's criminal history, which included three felony convictions other than the two strike convictions. It did not

9

expressly mention, nor did it have to mention, the "increasing seriousness" of the crimes. We do not read *Wiley* to say that there must be a "lock step" increase in the seriousness of appellant's prior crime history. All of his prior felonies were serious. And, as indicated, the present armed robbery and binding of the victim was, in our view, more serious than the previous crimes. This is "increasing seriousness." The probation officer here did not identify any theoretic factors in mitigation. The court also relied on the appellant's poor performance on both probation and parole. In considering both, a jury would have found this aggravating factor beyond a reasonable doubt. In our view, no "'rational fact finder could have come to the *opposite* conclusion.'" (*Wiley, supra,* 17 Cal.5th at p. 1090.)

Furthermore, the trial court "clearly indicate[d]" that it would not have imposed a lesser sentence had it been aware of its more limited discretion. (*Lynch, supra,* 16 Cal.5th at p. 743.) In imposing the upper term, the court placed particular emphasis on appellant's "long and significant criminal history." Appellant's criminal history spanned over 20 years, without significant periods where he was either crime-free, serving a prison sentence, or on probation. We have looked to the entire record in following our constitutional obligation. (Cal. Const., art. VI, § 13.) We "must, to some extent, weigh the evidence, for the probability of injury from the [assumed] error may be dependent on the state of the evidence." (9 Witkin, Cal. Procedure (6th ed. 2021) Appeal, § 439, p. 475; see also, *People v. Cahill* (1993) 5 Cal.4th 478, 490, 493.) There is no miscarriage of justice here. If we had any doubt, we would resolve it in favor of the defendant. Remand for resentencing is not necessary.

*Senate Bill No. 81*

Appellant also contends he is entitled to resentencing on his enhancements in light of Senate Bill No. 81's amendment to section 1385. We disagree. Effective January 1, 2022, Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill 81) amended section 1385 to add subdivision (c)(1). (Stats. 2021, ch. 721, § 1.) Senate Bill 81 "shall apply to sentencings occurring *after the effective date of the act* that added this subdivision." (§ 1385, subd. (c)(7), italics added.) Here, the sentencing hearing was held on May 12, 2021, and Senate Bill 81 does not apply.

*Fines and Fees*

Appellant contends the court's order imposing a court operations assessment of $30, a court facilities assessment of $40, and a $5,000 restitution fine without determining his ability to pay violated his state and federal right to due process. (*People v. Dueñas* (2019) 30 Cal.App.5th 1157.) He did not object when these fines and fees were imposed at his sentencing hearing in May 2021, which was over two years after *Dueñas* was decided. Therefore, the issue is forfeited. (*People v. Fransden* (2019) 33 Cal.App.5th 1126, 1153-1154; *People v. Greeley* (2021) 70 Cal.App.5th 609, 624.)

Appellant argues that trial counsel's "failure" to object amounted to ineffective assistance of counsel. But the record is silent as to counsel's reasons, if any, for "failing to object." If " ' "the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' " (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) In these circumstances, it is more

11

appropriately decided in a habeas corpus proceeding.  (*Id.* at p. 267.)

*Disposition*

The judgment is affirmed.

NOT FOR PUBLICATION.


YEGAN, J.

We concur:


GILBERT, P. J.


BALTODANO, J.

12

Michael L. Duffy, Judge

Superior Court County of San Luis Obispo

_____

John Derrick; Jennifer Peabody, Executive Director, David Andreasen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.